UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK HARVIN,                         :
  Plaintiff,                   :
           :
v.                                    :  Case No. 3:23cv328 (MPS)
           :
LT. JASON CHENEY, et al.,           :
  Defendants.                 :

## INITIAL REVIEW ORDER

The plaintiff, Mark Harvin, is a Connecticut inmate who was transferred to the custody of New Mexico Corrections Department. On March 9, 2023, Plaintiff filed this civil rights complaint, *pro se*, pursuant to 42 U.S.C. § 1983 against the Connecticut Department of Correction ("DOC") employees, Commissioner Angel Quiros, Gang Intelligence Coordinator Lieutenant Papoosha, and Acting District Administrator Guadarrama; and against DOC MacDougall-Walker Correctional Institution ("MWCI") employees, Captain Roy, Lieutenant Cheney, Counselor Supervisor Stanley, Lieutenant McDonald, Correction Officer Nguyen, Correction Officer Brysgel, Warden Kristine Baron, Correction Officer Bennett, and Correction Officer Schortman. Compl., ECF No. 1.[1] He sues each defendant in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such

---

[1] Plaintiff paid the court filing fee on April 10, 2023.

relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

## I.    ALLEGATIONS

Plaintiff previously filed an action against Lieutenant Cheney and another officer for assaulting him in 2018. *See* 3:19cv1429 (JCH).

In 2018, inmate Robert Williams was transferred from New York Correctional Department to Connecticut DOC. He was immediately placed on "High Security Status" by the DOC intelligence officers and others due to his history of assaults with a weapon, including razor blades.

In August 2019, Plaintiff was housed in Northern Correctional Institution on Administrative Detention and housed in the RHU 1 East. Inmate Williams was housed in the cell next to Plaintiff. Shortly after his placement, Williams received two razor blades from unit officers. After he refused to return them at the time of collection, the unit officers called a code, and Williams was placed in the medical unit on observation status. Within seventy-two hours, Williams returned to his cell next to Plaintiff. Lieutenant Papoosha was aware of the razor blade incident but did not investigate the issue. Williams received multiple disciplinary reports from DOC intelligence officers due to his SRG telephone conversations with other gang members, including references to his aggression toward Plaintiff and attempts to have other gang inmates attack Plaintiff.

Lieutenant Papoosha and Counselor Supervisor Stanley were both aware of Plaintiff's request for a keep separate or separation profile with Williams that had been ignored and/or

denied.

In July 2021, Plaintiff was housed in MWCI's Security Risk Group ("SRG") B-2 housing unit. At that time, he received information from DOC staff that Williams would be coming to his housing unit. He later learned from Correction Officer Brysgel, Captain Roy and Lieutenant Cheney that Williams would be housed in his cell. Cheney and Brysgel noted that Williams did not like Plaintiff and would "beat his ass," while Officer Brysgel stated that he could not wait for that to happen.

On August 2, 2021, Plaintiff wrote inmate requests to Counselor Supervisor Stanley, Captain Roy and Warden Baron to complain about being housed with Williams and his concern that Williams would assault him and endanger his safety. That same day, Captain Roy told Plaintiff that he would not change his mind and that Plaintiff should stop writing his "snitch request." Later that day, Williams moved into Plaintiff's cell. Officer Brysgel expressed that he hoped that Williams would not hurt Plaintiff too badly and would keep him alive.

The next day, Lieutenant Cheney saw Plaintiff during his tour, at which time he allegedly asked why he was writing a "snitch request" to Counselor Supervisor Stanley and Captain Roy about Williams. He inquired why he was saying that he feared for his safety. Cheney later indicated that he and Captain Roy had made sure Williams would be his cell mate.

On August 4, 2021, Plaintiff wrote another request to Captain Roy requesting that he move to a single cell as he felt unsafe while housed with Williams.

The next day, Plaintiff received a Disciplinary Report for telephone misuse and was moved to another cell pending segregation. Plaintiff later saw Captain Roy during his tour and asked him not to place him back in a cell with Williams. Captain Roy advised him to refuse

housing and go to protective custody.

Plaintiff later wrote to Warden Baron and Counselor Supervisor Stanley to request a single cell and to be moved away from Williams for safety reasons.

By August 12, 2021, Plaintiff moved back to his former cell, and inmate Williams had been moved to a different cell due to disciplinary reasons. Counselor Supervisor Stanley indicated that he had received Plaintiff inmate requests but did not care about his safety concerns related to his being housed with Williams. Later in August, Williams moved back into the cell with Plaintiff.

Plaintiff wrote inmate requests to Warden Baron and Lieutenant Papoosha to have Williams removed from his cell due to his safety concerns. Plaintiff received no response to his inmate requests sent to Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha or Warden Baron.

On September 3, 2021, Williams advised Plaintiff that Officer Brysgel and Lieutenant Cheney told him about Plaintiff's inmate requests. After Williams threatened him, Plaintiff called for assistance and stated he wanted to refuse housing. The unit officer refused to call for a lieutenant.

That evening, at 8:50 PM, Plaintiff pushed the cell emergency panic button but no one answered. A few minutes later, Williams struck him in the face with an object. Plaintiff's face was bleeding, and he yelled for help. Williams then continued with a violent assault while Plaintiff screamed for help. While Williams was punching Plaintiff, he heard an officer state, "Yeah Williams fuck him up." Later, Correction Officer Nguyen opened the door twice but walked away without calling a code or taking any action. Another correction officer and nurse

looked in, called a code, and yelled for Williams to let go of Plaintiff. Moments later, Lieutenant Cheney and Lieutenant McDonald arrived at Plaintiff's cell with medical staff. Lieutenant Cheney yelled for Williams to let Plaintiff go and then sprayed Plaintiff directly in the face with a chemical agent through the trap door. At that point, Williams let go of Plaintiff's neck. After Plaintiff fell to the floor, Lieutenant Cheney continued to spray him with the chemical agent.

Williams was cuffed, and Plaintiff was escorted to the medical unit and then to the UConn John Dempsey Hospital. Plaintiff suffered a concussion, swelling on his face, temple and head, laceration to his eye, a busted swollen nose, chipped tooth, broken skin from biting, and closed eye. He suffered a life threatening injury due to a large laceration at his mouth that required forty stitches. After he returned to the facility, he was housed at the MWCI Medical Infirmary due to his injuries until he was cleared by a doctor.

On September 4, 2021, Plaintiff wrote inmate requests to Captain Roy, Warden Baron and Counselor Supervisor Stanley about failure to comply with DOC policy and rules for High Security Inmates but received no reply.

Plaintiff filed a Level One Grievance about the assault, which Warden Baron denied. Thereafter, Plaintiff filed a Level Two Appeal, which District Administrator Guadarrama denied. Guadarrama did not permit Plaintiff to file a Level Three Appeal.

Plaintiff also filed another grievance to complain about failure to follow DOC policy, protocol, directives and procedures for High Security Status inmates such as Williams. Warden Barone improperly rejected this grievance. Officer Bennett returned this Level One Grievance, and informed Plaintiff that "this is what happens when you get it twisted with c/os we stick together."

5

On November 16, 2022, Plaintiff completed the SRG program at Connecticut DOC.

On November 22, 2022, Plaintiff was transferred to a prison within the New Mexico Corrections Department. Plaintiff received no notice, hearing, or explanation prior to his transfer. Plaintiff had not requested an out-of-state transfer. Plaintiff made requests to Lieutenant Papoosha, Commissioner Quiros and the New Mexico Corrections Department to provide him with all documents regarding his transfer but never received a reply.

On February 16, 2023, Plaintiff was violently assaulted and stabbed by multiple New Mexico gang members. Plaintiff has sent requests to Lieutenant Papoosha and Commissioner Quiros for his removal from housing within the New Mexico Corrections Department and return to Connecticut or New York correctional institutions.

Plaintiff fears for his life housed within New Mexico Corrections Department due to the gang members who would pose a threat even if he were placed in protective custody.

## III.  DISCUSSION

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir.1997) (citation omitted). The Court first considers whether Plaintiff has alleged any plausible constitutional claims for damages.

### A.  Individual Capacity Claims for Damages

The court construes the complaint as raising First, Eighth, and Fourteenth Amendment violations. "It is well settled in this Circuit that 'personal involvement of defendants in alleged

6

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

      **1.**      **Eighth Amendment Deliberate Indifference to Health and Safety**

      In order to show a violation of his Eighth Amendment rights for deliberate indifference to his health or safety, Plaintiff must allege (1) that he was incarcerated under "conditions posing a substantial risk of serious harm" and (2) that the prison official putting him in those conditions was deliberately indifferent to his health or safety. *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). In order to meet this second prong, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Plaintiff must allege facts to suggest that a defendant acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023).

      Plaintiff's allegations plausibly suggest that Lieutenant Cheney, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, and Officer Nguyen acted with deliberate indifference to a substantial risk of harm from Williams and/or for failing to protect Plaintiff from harm by Williams. Accordingly, Plaintiff may proceed

on his Eighth Amendment claims for damages against Lieutenant Cheney, Correction Officer

Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, and

Officer Nguyen for deliberate indifference to his health and safety.[2]

       Plaintiff alleges that Lieutenant McDonald arrived at the cell in response to the code, but

he has not alleged facts suggesting that McDonald acted with conscious disregard to his risk of

harm from Williams. In addition, Plaintiff has not alleged any facts describing the specific

involvement of Correction Officer Schortman[3] or Commissioner Quiros, or any other

defendants, in deliberate indifference to his risk of harm from Williams and/or failure to protect

him from harm by Williams. Accordingly, the Court must dismiss as not plausible claims for

damages against any other defendant based on Eighth Amendment deliberate indifference to

Plaintiff's harm from Williams and/or failure to protect him from harm by Williams.

### 2.    Eighth Amendment Excessive Force

       To allege an Eighth Amendment claim of excessive force, Plaintiff must show that the

force employed by a defendant was not "applied in a good-faith effort to maintain or restore

discipline" but was done "maliciously or sadistically to cause harm," and that the harm done was

objectively serious enough to violate Plaintiff's constitutional right to be free from such harm.

*See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000). A plaintiff may also proceed on his excessive

force claims against a defendant who had an opportunity to prevent the alleged misuse of force

---

[2] This claim encompasses deliberate indifference to Plaintiff's risk of harm caused by Defendants' reference to Plaintiff's "snitch requests." *See Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018) ("a number of courts have found an Eighth Amendment violation where a guard publicly labels an inmate as a snitch, because of the likelihood that the inmate will suffer great violence at the hands of fellow prisoners.").

[3] As Plaintiff has not alleged facts sufficient to suggest Officer Schortman's direct personal involvement in any constitutional violation, the Court will dismiss Schortman from this action.

but failed to intervene. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (explaining that an officer can be held liable under § 1983 for "the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that … any constitutional violation has been committed by a law enforcement official.").

For purposes of initial review, Plaintiff has adequately alleged Eighth Amendment excessive force claims against Lieutenant Cheney (who sprayed Plaintiff in the face with a chemical agent) and against Lieutenant McDonald (who was present but failed to intervene). Accordingly, Plaintiff may proceed against Lieutenants Cheney and McDonald on his Eighth Amendment claims for damages based on the misuse of force.

### 3.     Eighth Amendment Deliberate Indifference to New Mexico Corrections Department Conditions of Confinement

The Court construes Plaintiff's complaint to raise Eighth Amendment claims based on his allegations that he has requested Commissioner Quiros and Lieutenant Papoosha to remove him from New Mexico Corrections Department confinement where he has been assaulted and continues to fear for his life. As his allegations indicate that neither Commissioner Quiros nor Lieutenant Papoosha have taken any remedial action to ensure his safety, the Court will permit Plaintiff to proceed on Eighth Amendment claims for damages against Quiros and Papoosha for further development of the record.[4]

### 4.     First Amendment Retaliation

---

[4] To the extent he claims an Eighth Amendment violation based on his transfer, Plaintiff has not alleged any facts indicating that any defendant knew or was aware that he would be subjected to conditions that posed a risk of harm to him by transferring him to confinement within the New Mexico Corrections Department. *See Baltas v. Maiga*, No. 3:20CV1177 (MPS), 2020 WL 6275224, at *10 (D. Conn. Oct. 26, 2020).

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). To establish a claim for unlawful retaliation against First Amendment speech, a plaintiff must prove that he engaged in speech activity that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected speech activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan*, 794 F.3d at 294. "Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Baltas v. Maiga*, No. 3:20cv1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020). A plaintiff must prove that he suffered an adverse action that would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001).

At this early stage in the proceeding, Plaintiff has sufficiently alleged that he sustained adverse action by being housed with and subjected to an assault by Williams as a result of his prior protected conduct of filing a lawsuit against Lieutenant Cheney and filing numerous grievances. The Court will permit Plaintiff to proceed on his First Amendment retaliation claims against Lieutenant Cheney, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, and Officer Nguyen.

10

The Court recognizes that an inmate has no constitutional right to have his grievances addressed or to receive what he considers to be a proper response. *Dunbar*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *7. But Plaintiff has also sufficiently alleged that Warden Baron, District Administrator Guadarrama and Officer Bennett acted with a retaliatory animus in their treatment of his grievances.

In sum, Plaintiff may proceed against Lieutenant Cheney, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, Officer Nguyen, District Administrator Guadarrama and Officer Bennett for damages on his First Amendment retaliation claims.

### 5.     Fourteenth Amendment Procedural Due Process

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (per curiam).

### a.     Grievance Procedure

To the extent Plaintiff claims a Fourteenth Amendment procedural process violation on the basis of grievance mishandling, such a claim is not plausible. This is so because "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014)

(alterations omitted); *see also Schlosser v. Manuel*, 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) (stating that a claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right") (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018)). Accordingly, the court must dismiss as not plausible Plaintiff's Fourteenth Amendment due process claims arising from any improper handling of his grievances.

> **b.      Transfer to New Mexico Corrections Department**

Plaintiff complains that he was transferred to confinement within the New Mexico Corrections Department—where he has allegedly been subjected to assault and continues to fear for his safety—without the procedural guarantees under Fourteenth Amendment due process clause. However, an inmate has no Fourteenth Amendment right to be confined at a particular prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules"); *McCarthy v. Teta*, 101 F.3d 108 (2d Cir. 1996) ("McCarthy's due process claim fails because he does not have a liberty interest in a transfer to a federal prison or a different state prison system. Prison transfers do not implicate a liberty interest in the absence of state law suggesting otherwise."); *Andrews v. Semple*, No. 3:17CV1233 (SRU), 2017 WL 5606740, at *4 (D. Conn. Nov. 21, 2017) (dismissing due process claim that prison officials refused to transfer inmate to prison facility of his choice, Garner Correctional Institution, because "he has no constitutionally protected right to be housed" at Garner or any other facility); *Remillard v. Maldonado*, No. 3:15CV1714 (SRU), 2016 WL 3093358, at *3 (D. Conn. June 1,

2016) ("The Eighth Amendment does not require the least restrictive housing for a prisoner."). Thus, Plaintiff cannot premise a Fourteenth Amendment claim on the mere fact of his interstate transfer to a facility within the New Mexico Corrections Department.

### B.     Official Capacity Claims

Plaintiff's complaint indicates that he asserts his claims against all Defendants in their official capacities. To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). Thus, Plaintiff may sue Defendants in their official capacity "for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

Plaintiff has sufficiently alleged that he is subject to an ongoing Eighth Amendment violation due to the failure to remove him from his allegedly unsafe conditions of confinement within the New Mexico Corrections Department. *See* Compl. at ¶ 118. Accordingly, Plaintiff may proceed on his official capacity requests related to his removal from confinement within the New Mexico Corrections Department against Defendants Commissioner Quiros and Lieutenant Papoosha, who could plausibly provide him with the requested relief. All other claims against Defendants in their official capacities are DISMISSED as not plausible because Plaintiff is now

housed within the New Mexico Corrections Department and any other claims for prospective relief arising from his confinement within Connecticut DOC against Defendants are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility.).

      **C.**      **State Law Negligence and Recklessness Claims**

Plaintiff asserts that Defendants should be liable for negligence. Connecticut General Statutes section 4-165 bars negligence claims against state employees acting within the scope of their employment. *See* Conn. Gen. Stat. § 4-165(a) ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."); *see also Miller v. Egan*, 265 Conn. 301, 319 (2003) (state employees are not "personally liable for their negligent actions performed within the scope of their employment"). Defendants are all state employees who were acting within the scope of their employment. Thus, they are generally immune to state negligence tort claims, including negligent infliction of emotional distress. *Sheppard v. Roberts*, No. 3:20-CV-875 (VAB), 2021 WL 3023090, at *2 (D. Conn. July 16, 2021) (dismissing negligence claims including negligent infliction of emotional distress).

Plaintiff has pleaded plausible Eighth Amendment deliberate indifference and excessive force claims that suggest reckless indifference; thus, the Court will permit Plaintiff to assert claims under state law asserting that he was harmed as a result of recklessness against Lieutenant Cheney, Lieutenant McDonald, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, Officer Nguyen, and Commissioner Quiros.

14

*See Miller*, 265 Conn. at 319 (immunity does not apply to "reckless" conduct).

## IV. ORDERS

The Court enters the following orders:

(1) The case shall proceed on (1) Plaintiff's Eighth Amendment claims of deliberate indifference to his health and safety arising from his risk of harm from Williams against Lieutenant Cheney, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, and Officer Nguyen in their individual capacities; (2) his Eighth Amendment excessive force claims against Lieutenant Cheney and Lieutenant McDonald in their individual capacities; (3) his Eighth Amendment claims of deliberate indifference to his risk of harm from confinement within the New Mexico Corrections Department against Commissioner Quiros and Lieutenant Papoosha in their individual and official capacities; (4) his First Amendment retaliation claims against Lieutenant Cheney, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, Officer Nguyen, District Administrator Guadarrama, and Officer Bennett in their individual capacities; and (5) his state law recklessness claims against Lieutenant Cheney, Lieutenant McDonald, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, Officer Nguyen, and Commissioner Quiros in their individual capacities. Defendant Schortman is DISMISSED from this action. All other claims are DISMISSED.

If Plaintiff wishes to correct the deficiencies of his claims as identified in this initial review order, Plaintiff may file an amended complaint within thirty days of this ruling's filing date. Plaintiff is advised that the Court will not incorporate any allegations of his prior complaint into any amended complaint, and any amended complaint will replace his prior complaint.

Plaintiff must name in the case caption of his amended complaint all defendants against whom he asserts claims.

(2) In light of the difficulty that Plaintiff, a *pro se* prisoner confined within the New Mexico Corrections Department, will likely encounter to effectuate service on Defendants, the Court instructs the clerk to verify the current work addresses for Lieutenant Cheney, Lieutenant McDonald, Correction Officer Brysgel, Counselor Supervisor Stanley, Captain Roy, Lieutenant Papoosha, Warden Baron, Officer Nguyen, Officer Bennett, District Administrator Guadarrama, and Commissioner Quiros with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Within **twenty-one (21) days** of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint, and a copy of this Order on Commissioner Quiros and Lieutenant Papoosha in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

(4) The clerk shall mail a courtesy copy of complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

16

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)   If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the

17

notification of change of address. He should also notify the defendants or defense counsel of his

new address.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 6th day of June 2023, at Hartford, Connecticut.