### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK HARVIN, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:23cv328 (MPS) |
| | : | |
| LT. JASON CHENEY, et al., | : | |
| *Defendants*. | : | |

### <u>RULING ON MOTION FOR SANCTIONS</u>

The plaintiff, Mark Harvin, is a Connecticut inmate who is now housed within the custody of the New Mexico Corrections Department ("NMCD"). On March 9, 2023, Plaintiff filed this civil rights complaint, *pro se*, pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1. On initial review, I permitted Plaintiff to proceed on (1) alleged First Amendment retaliation and Eighth Amendment violations arising from his being housed with and assaulted by another inmate at MacDougall-Walker Correction Institution ("MWCI"); and (2) alleged Eighth Amendment violations arising from his confinement within the NMCD. Initial Review Order ("IRO"), ECF No. 11.

Defendants have filed a motion seeking sanctions, including dismissal, based on the Plaintiff's disclosure to Connecticut Department of Corrections ("CT DOC") inmates of discovery materials regarding another inmate's alleged cooperation with prison officials. ECF No. 49. For the reasons that follow, I grant in part and deny in part the motion for sanctions. I will not issue an order of dismissal but will bar the Plaintiff from receiving further discovery materials in this case.

### I.    Background

On March 9, 2023, Plaintiff filed his complaint in this action. In it, Plaintiff alleges that

he was housed in a cell with inmate 1 while in the Connecticut DOC MWCI Security Risk Unit

("SRG Unit"), despite Plaintiff's requests expressing his need to be housed separately from

inmate 1 due to his safety concerns.[1] ECF No. 1 at ¶¶ 4, 7-13, 15, 18-22. Plaintiff claims that he

was later assaulted by inmate 1 and that CT DOC staff acted with deliberate indifference to his

risk of harm. *See id.* at ¶¶ 26-44. On November 22, 2022, Plaintiff was transferred to a prison

within the NMCD, where he has allegedly been violently assaulted and stabbed by New Mexico

gang members. *Id.* at ¶¶ 108, 116.

I entered this court's Standing Protective Order on the same day Plaintiff commenced this

action. ECF No. 5.

On June 6, 2023, I issued an initial review order, permitting Plaintiff to proceed on First

and Eighth Amendment claims. ECF No. 11.

On June 13, 2023, I issued this court's Standing Order re: Initial Discovery Disclosures.

ECF No. 12. Under that Order, Defendants were obligated to provide Plaintiff with, *inter alia*, a

"list of any witnesses believed to have relevant information regarding the claims in the

Complaint" and "[c]opies of any incident reports, reports of investigation, disciplinary reports, or

similar reports relating to the claims in the Complaint." *Id.* at 2-3. On November 17, 2023,

Defendants sent Plaintiff initial disclosures including incident reports (with some redactions)

related to his alleged assault by inmate 1. *See* ECF No. 49-1 at 2; ECF No. 65 (DOC records

under seal).

On December 26, 2023, Defendants filed a motion seeking sanctions, including

dismissal, based on Plaintiff's communications with another MWCI SRG inmate about the

---

[1] For reasons that will become apparent from the discussion in this ruling, I use the description "inmate 1" to refer to the inmate who allegedly cooperated with CT DOC. The identity of inmate 1 is known to the parties.

contents of an incident report included in the initial disclosures suggesting that inmate 1 had provided information to CT DOC officials. ECF No. 49. Defendants assert that Plaintiff spoke with the other MWCI SRG inmate by telephone on November 27, 2023 and told him about inmate 1's conversations with DOC officials as described in the initial disclosures. ECF No. 49-1 at 3-4. Defendants point out that inmate 1 is expected to be a witness in this case and assert that, by "outing" inmate 1 as a "rat," Plaintiff has "willfully attempted to bring harm to a witness in a live litigation matter." *Id.* at 7.

On January 23, 2024, Plaintiff filed his objection to the motion for sanctions and dismissal asserting that he did not make any threats or express that he wanted inmate 1 harmed. ECF No. 57 at 2. He claims that he was "only explaining discovery material to a friend, and explaining what this document[] was saying[.]" *Id.* In addition, he asserts that he has renounced his SRG affiliation and did not abuse discovery. *Id.* at 7-8.

On February 12, 2024, I issued an order advising Plaintiff that I "will not tolerate any conduct that abuses the litigation process" and "[n]either counsel nor parties, including *pro se* litigants, are permitted to misuse the information provided through discovery to harass or endanger the safety of another individual." ECF No. 62. I cautioned Plaintiff that "should the Court be apprised of any conduct like the conduct described in the defendants' motion by the Plaintiff in this or any of the cases he has filed in this District, the Court will, without further warning, dismiss this action and/or others filed in this Court; the Court may also issue a pre-filing injunction that would enjoin Plaintiff from filing future litigation in this District without first obtaining leave of Court." *Id.*

On April 15, 2024, after reviewing the discovery material that the Plaintiff shared with the other MWCI SRG inmate, I issued the following order:

> The discovery material posted in response to the Court's February 12 order (ECF No. 65) does not appear to have been designated "confidential" under the Court's protective order (ECF No. 5). It is possible, however, that the material was produced in the form of a thumb drive or by other electronic means, in which case a clearly written cover letter or other written communication would have sufficed to make a confidentiality designation. See ECF No. 5 ("Documents shall be designated by stamping or otherwise marking the documents. Designated Material not reduced to documentary form shall be designated by the producing party in a reasonably equivalent way."). If the Defendants believe that the discovery material that the plaintiff used improperly, as described in the defendants' motion for sanctions (ECF No. 49), was designated confidential under the protective order, or that the plaintiff was otherwise on notice that it was subject to the restrictions in the protective order, they shall, on or before April 25, 2024, file a short statement indicating why they believe this to be so and shall attach any evidence supporting that belief.

ECF No. 67.

In their response, Defendants' lawyers stated that the relevant "incident report" provided to Plaintiff "was not marked 'confidential' under this court's standing order (ECF No. 5)." ECF No. 69. They maintain that it "is not apparent that such marking would have been appropriate, as the standing order appears aimed at business/trade secrets." *Id.*

## II.    DISCUSSION

"Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent powers." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997). "[Federal] Rules [of Civil Procedure] 26(g) and 37 represent the principal enforcement power to punish discovery abuse." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 236–37 (2d Cir. 2020) (internal quotation marks omitted). I first consider whether I may

4

sanction Plaintiff's conduct under Rule 37(b).[2]

<u>Sanctions Under the Court's Authority Under Rule 37(b)</u>

Under Rule 37(b), a court may dismiss a case or impose other sanctions if a party does not obey an order to provide or permit discovery.[3] "[A]ll litigants, including *pro ses*, have an obligation to comply with court orders." *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990) (internal quotation marks and citation omitted). To determine the appropriate sanction, a court considers: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *Fresh Air for Eastside, Inc. v. Waste Mgmt. of New York LLC*, No. 18-CV-06588, 2024 WL 1678067, at *2 (W.D.N.Y. Apr. 18, 2024) (citation omitted). The Second Circuit has affirmed dismissal with prejudice as an appropriate sanction under Rule 37(b) for a party's violation of a pretrial protective order. *See Blum v. Schlegel*, 108 F.3d 1369 (2d Cir. 1997) (unpublished). But

---

[2] Defendants' motion does not implicate the Court's authority to issue sanctions under Rule 26(g). It requires that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." Fed. R. Civ. P. 26(g)(1). By signing a response to a discovery request, an attorney certifies that—to the best of that attorney's knowledge, information, and belief formed after a reasonable inquiry—the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose (such as to harass); and (3) reasonable given the importance of the issue and the circumstances of the case. *Taylor v. City of New York*, No. 1:16-CV-01143, 2024 WL 342354, at *1 (S.D.N.Y. Jan. 30, 2024). "Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" *Kiobel v. Royal Dutch Petroleum Co.*, No. 02-cv-7618, 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009) (quoting Fed. R. Civ. P. 26 advisory committee's note).

[3] Rule 37(b)(2) explicitly authorizes the court to issue sanctions including "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

dismissal is a "harsh remedy" to be used "only in extreme situations." *Ferrer v. Fischer*, No. 9:13-CV-0031, 2014 WL 5859139, at *2 (N.D.N.Y. Nov. 12, 2014) (citation omitted).

Defendants provided Plaintiff with initial disclosures including material that described conversations between inmate 1 and DOC officials. Defendants' evidence of Plaintiff's misuse of this material—including the audio recording of Plaintiff's communication on November 27, 2023 (ECF 64 filed manually under seal), the initial disclosures provided to Plaintiff (ECF No. 65 filed under seal), and the incident report from November 27, 2023 regarding the telephone call (ECF No. 49-3)—shows that Plaintiff discussed with the other MWCI SRG inmate information in his discovery materials that he believed identified inmate 1 as a "rat" who was cooperating with prison authorities. *See* ECF No. 64 (11-27-2023 telephone call at 8:17:35 at 1:23-4:30).

As a matter of common sense, no litigant should compromise the safety of another individual by communicating about the contents of discovery materials. But Plaintiff's misconduct does not implicate the court's power under Rule 37(b) unless he failed to cooperate with discovery or violated a court order.

Although Defendants do not so argue, I also consider whether Plaintiff violated the Court's Standing Protective Order when he conversed with the other MWCI SRG inmate about the discovery material. *See* ECF No. 5. The Court's Standing Protective Order specifically provides that designated discovery material—"CONFIDENTIAL" or "CONFIDENTIAL— ATTORNEY'S EYES ONLY"—"shall not be used or disclosed for any purpose other than the litigation of this action" and such information may be disclosed only in accordance with the Order. *See id.* at §§ 2-5. Under Section 3, the Standing Protective Order defines

"CONFIDENTIAL" information as "information, documents, or things that have not been made public by the disclosing party and that the disclosing party reasonably and in good faith believes contains or comprises (a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy." Thus, contrary to Defendants' assertions, a confidential designation would have been permitted and protected by the Standing Protective Order here, because it would have honored "an individual's legitimate expectation of privacy."[4]

Reports about an inmate's conversation with, or statements to, prison officials about activities of other inmates plainly implicate the inmate's legitimate expectation of privacy; indeed, prison officials are often able to elicit cooperation from inmates only after they promise the inmates secrecy and safety.   Defendants apparently overlooked the Standing Protective Order's explicit protection of legitimate individual privacy interests stated in section 3(c). *See* Standing Protective Order § 3, ECF No. 5.

As Defendants failed to mark the material as "confidential" under the Standing Protective Order—and have provided no indication of a written communication to designate the discovery material as confidential or to impose any restriction on how Plaintiff could use the information (*See* ECF No. 69)—I cannot conclude that Plaintiff violated a court order or failed to permit or provide discovery. Thus, I cannot issue sanctions under Rule 37(b).

<u>Sanctions Under the Court's Inherent Authority</u>

Defendants argue that Plaintiff's use of "the litigation and discovery process maliciously

---

[4] By contrast, section 4 of the Court's Standing Protective Order is focused solely on commercial secrets, defining "CONFIDENTIAL-ATTORNEY'S EYES ONLY" as "CONFIDENTIAL information that the disclosing party reasonably and in good faith believes is so highly sensitive that its disclosure to a competitor could result in significant competitive or commercial disadvantage to the designating party." ECF No. 5.

to place a third-party's safety in jeopardy and undermine the safety and security of a DOC facility" should prompt the Court to issue sanctions, including dismissal, under its inherent authority. ECF No. 69; ECF No. 49-1.

Under its inherent power, a court may impose sanctions against a party for "act[ing] in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991) (citations omitted), and for "misconduct during the course of litigation." *Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 37-38 (2d Cir. 1995). Likewise, a court may also sanction a party under its inherent power "to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). The court's inherent power to sanction bad faith litigation abuse "stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (citations omitted). Such sanctions are warranted only where there is clear and convincing evidence of bad faith. *Yukos Capital S.A.R.L.*, 977 F.3d at 235. The court may impose a wide range of sanctions, including dismissal of a party's claims. *See Chambers,* 501 U.S. at 44–45. But "inherent powers must be exercised with restraint and discretion." *Id.* at 44.

Dismissal, which Defendants request here, is a "drastic remedy that should be imposed only in extreme circumstances." *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (quotation omitted). It is a last resort imposed only after consideration of less severe sanctions. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (citation omitted). Imposition of sanctions can "implicate[ ] due process concerns,"

8

which "are particularly strong when the sanction sought is an outright dismissal[.]" *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 n.14 (1980) (citing *Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 209 (1958)).

Here, neither Defendants nor I provided Plaintiff with notice that the discovery information was confidential or that he was restricted from sharing the information. While it should be common sense, as noted, that it is dangerous and therefore inappropriate to share discovery material of the type involved here in the manner that Plaintiff did, courts do not ordinarily dismiss cases brought by *pro se* litigants just because they fail to exercise common sense, even when, as in this case, their actions are reckless. Nor is there any evidence that Plaintiff has engaged in similar abuse after the Court's warning. ECF No. 62; *see Harry v. Lagomarsine,* No. 18-cv-1822, 2019 WL 1177718, at *2 (E.D.N.Y. March 13, 2019) (noting dismissals after warning). Under these circumstances, I cannot make a finding by clear and convincing evidence that Plaintiff so willfully or intentionally abused the litigation process that I should go so far as dismissing the case. Although Defendants argue that Plaintiff's misuse of discovery material shows that his entire lawsuit was just "a pretext to obtain[] sensitive records to further his own retaliatory and illegal interests," ECF No. 49-1 at 6, Defendants have not shown by clear and convincing evidence that that is the case. Nor have Defendants shown that Plaintiff's behavior – as irresponsible, reckless, and dangerous as it was – was calculated to eliminate a witness or amounted to a death threat. There is simply not enough evidence to support such inferences that would reach the clear and convincing bar. Finally, despite Plaintiff's communications about inmate 1, Defendants represent that inmate 1 is currently safe within

DOC custody. ECF No. 49-1 at 4 ("DOC staff believe he can be safely managed at this time."). So I will not impose the extreme sanction of dismissal.

None of this changes the fact that Plaintiff has behaved irresponsibly and in a reckless manner that puts another inmate at risk of harm. It is well known "that inmates known to be snitches are widely reviled within the correctional system." *Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018) (noting "the extreme risk" for inmates associated with "snitching in the prison context"). And so it is obvious that labelling another inmate as a rat, snitch, or informant can pose a serious risk of harm to that inmate within the prison community. *Lawrence v. Agramonte*, No. 3:19-CV-1498, 2020 WL 2307642, at *5 (D. Conn. May 8, 2020) (recognizing that identifying an inmate as a rat or snitch can subject an inmate to excessive safety at risk). Plaintiff's expressed intent to "shoot [the information] to the town" and "post it" on social media is especially alarming and irresponsible, and suggests that Plaintiff was well aware of these risks. *See* ECF No. 64 (11-27-2023 telephone call at 8:17:35 at 1:23-4:30).[5] Even a *pro se* litigant such as Plaintiff may not abuse the process of the Court or use it as "a weapon of harassment[.]" *Harry,* 2019 WL 1177718, at *3. So while there is not enough evidence that Plaintiff willfully abused the litigation process to warrant the extreme sanction of dismissal, there is clear and convincing evidence that Plaintiff acted in bad faith in communicating information about another inmate.

As a result, although I will not dismiss this action, I do impose a sanction. I find that Plaintiff has forfeited his right to receive any further discovery in this case by demonstrating that

---

[5] In response to Plaintiff's communication about information contained within his discovery materials about inmate 1, the other MWCI SRG inmate exclaimed, "I need that," "that's nasty, that's nasty" and yelled to someone else at MWCI about inmate 1 being a "rat." *See id.* (11-27-2023 telephone call at 8:17:35 at 1:38-4:30).

he cannot be counted on to handle it responsibly. So going forward, Plaintiff may not seek or receive any further discovery material in this action. Discovery is closed except to the extent that Defendants seek to take Plaintiff's deposition. They must complete the deposition no later than June 21, 2024, and must filed any dispositive motion by September 9, 2024.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion for sanctions. ECF No. 49. Under its inherent authority, the Court prohibits Plaintiff from seeking or receiving any further discovery. Discovery is closed except to the extent that Defendants seek to take Plaintiff's deposition. In addition, for the reasons set forth in this ruling, including that certain materials on the docket identify inmate 1, the Clerk's Office is instructed to seal ECF Nos. 1, 11, 49, 57, 61, and 66. Going forward, neither party may file anything on the docket that identifies inmate 1. To the extent they need to refer to that inmate in materials filed on the docket, they shall either redact the name of the inmate or refer to the inmate as inmate 1.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 7th day of May 2024, at Hartford, Connecticut.